Mr. Justice Johnson
delivered the opinion of the Court.
The acts of the legislature, regulating sheriffs sales of property taken in execution, are themselves involved in some obscurity; and the contrariety of usage under them in different parts of the state, has been productive of still greater confusion; and in some of the districts the lodgment of an execution in the sheriff’s office, is in practice, but the incipient stage of the troubles which attend a lawsuit. For the plaintiff to dance attendance on the sheriff from sale day to sale day, and from time to time, and obtaining rule after rule against him, is seen almost' every day; and in the event of his ultimately obtaining an attachment against him for neglect of duty, it is not unusual to see it placed in the hands of a Coroner, who is perhaps his deputy or gaoler. And one case has occurred, within my own knowledge, where an attachment was granted against the coroner for not doing his duty, on an execution against the sheriff, and another against the sheriff for not attaching the coroner. In this situation, they bid defiance to law, as there was no one to execute its process; and this farce was played off for several years to the great prejudice of honest creditors. To reduce order out of this state of things, is a matter of some difficulty; and I fear the court want the power, in some respects, to do so; but 4 is of the utmost importance that the court should promptly settle, as far as they can, all the questions which arise out of it.
The act most directly applicable to the question arising, out of this case, is that of 1796, entitled, “ An act, to prevent debtors from purchasing, repeatedly, their own pro,-. *196 perty at sheriffs’s sales; and for the better regulation oí sheriffs and other sales at auction.” The substantial provisions of it are, that every purchaser at sheriff’s sales, shall, if the plaintiff desire and direct the game, (of which the plaintiff must give the sheriff notice in xvriting, in time to enable him to insert such notice in one of his advertisements,) immediately after any article of property is knocked off to him, pay into the hands of the sheriff, a sum which shalL be equal at least to ten per cent, upon the amount of his purchase; and if he should fail or neglect to make such payment, the sheriff shall immediately set up the same property for sale upon the spot; and upon the resale, the sheriff is forbidden to receive the bid of the first purchaser. And “ if any purchaser, after paying the per cen-tage aforesaid, shall fail or neglect to comply with the terms of the sale, all the money so paid shall be forfeited to the plaintiff in the execution, under which such sale was made,” which is to be applied first to the payment of the costs, and the surplus, if any, to the debt. (2 Brevard, 218, 219.)
On the construction of this act, it is contended that the immediate payment of the ten per cent, required by the act, was intended as a security in the first instance, that the purchaser would comply with the terms of the sale; and secondly, that it should operate as a penalty upon him in the event of his refusing to do so ; and raises a strong presumption that it was not contemplated by tbe act to require him to pay the whole purchase money immediately on demand, and gave to the purchaser further time to comply with the terms. There are, however, strong reasons opposed to this construction," I cannot believe, nor can I collect it from the act, that the legislature ever intended to protract the payment of judgments by payments in install ments of ten per cent, from sale dáy to sale day. The occasion which gave rise to it is expressed in the title of the act, and is familiar to all my brethren; and the very mischief which it was intended to-prevent, will be legalized by this construction. The provision,, that the first purcha *197 -íer’s bid shall not be again received, imposes no restraint. If the defendant can muster ten friends on those occasions, •which he may always do with ten per cent, in his pocket, he gains time and looses nothing. By the very terms of the act, it is to be applied, first to the payment of the costs, and then the debt. The act, as I have before remarked,, does not postpone the time at which the property is to be resold; and I think we ought not to do so by construction. In this respect therefore, the law ought to stand precisely as it was before. Here I am met with the act usually called the vendue act. This act provides that “ every person who shall purchase any lands, slaves, houses, horses, cattle, ships, boats or other vessels, goods, wares and merchandize, at any public sale 'in this state, and which purchase shall be entered on the boobs of the vendue-mas-ter, so selling such property, such person refusing to comply with the condition of the said sale, within seven days, thereafter, shall be liable to all losses thereon to the original ojvner.” And for the more speedy ascertaining said losses, the vendue-masters are authorized to resell, after giving seven days notice. This act, it is contended, allows the purchaser seven days at least to comply with the terms of the same.
If I were now left for the first time to put a construction on this act, the first answer I would give to it would be, that it has no relation to sheriff’s sales. On looking into the whole act, it most obviously appears that the avowed object of it was to regulate sales by vendue-masters, and not sheriffs. This is admitted; but it is said that the prim - ciples of the act have, in usage and the decisions of tin-courts, been constantly applied to sheriff’s sales ; and if this be so,-it would ’be inexcusable .to controvert its correctness ,- nor do I thihfc it necessary to the present occasion. This act does not forbid an immediate resale, and makes the seven days notice necessary only to charge the. first purchaser. There must be a reciprocity in every legal contract, and if the purchaser has a right to seven day? to determine vdiether he will or will pot comply with the *198 terms, the seller, or to use the terms of the act, the original owner may recede from it, and consequently may resell immediately, if he chose. No wrong is done to the purchaser, and the only effect is, that the seller loses his remedy against him for any losses which may be sustained. Upon the whole, it appears to me that sheriff’s and other public sales are precisely upon the same -footing of all other contracts for the , sale of property, unless when they are regulated by positive law, and then the law makes the contract for them, with the terms of which the parties are bound to comply.
Let us then apply these principles to the present case.— In the absence of positive law, neither would be bound by a sale at vendue, until the thing sold was delivered and accepted.
The vendue act, however, binds the purchaser for all losses which may be sustained, if he fail to comply with the terms of the sale, and the mode of ascertaining that' loss is pointed out. The act of 1796, first quoted, usually' called the ten per cent, law, however, authorized the plaintiff to demand ten per cent, and if it be not paid, he may resell immediately, and the mode in which that demand is to be made, is pointed out; and these acts, taken together, constitute what I regard as the conditions of the contract between J:he parties. ■
If the plaintiff, therefore, demand and receive the 10 per cent, in the manner prescribed by the act, the purchaser has complied with the condition of the' contract between them, and nothing more can .be required of him, unless he choose to comply fully with the purchase, and for this the vendue act gives him time. If the ten per cent is not demanded, the law stood as before that act. If ' the seller thought proper, he might charge the purchaser with any loss which he may sustain, or if he choose, he might, on the general principle of law, regard it as at an end, and resell immediately. The purchaser could not complain; he has complied with his contract; and no one can take advantage of his own wrong. It is objected., *199 however, that the defendant in the execution might sustain an injury in consequence of a prompt resale. I think not. All that he can require is, that his property should be regularly advertised, and sold on a regular §ale day, and within the hours of sale. The bid of a person not intending to comply with the terms of the sale, gives it a fictitious value ; and it .ought to be recollected that these subterfuges are most frequently resorted to by defendants* Indeed it very rarely happens otherwise. If, however, a case should occur, in which a defendant was really injured by the improper conduct of a person purchasing and refusing to comply with the terms of the sale, I should incline to think that he might recover the loss in an action against him.
Gregg, for the motion.
Goodxvyn, contra.
This view of the case leads to the conclusion that when the plaintiff demands and receives the ten per cent, the sheriff cannot immediately resell. But where he does not, the property may be resold even on the same day ad infi-nitum, if the terms be not complied with.
The plaintiff demanded and received the ten per cent . in this case; the rule was therefore properly dismissed.
Justices Nott, Gantt and Huger, concurred.